CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for RKe

SEP 16 2014

JULIA C. DUDLEY, CLERK
BY: HMcDonaq
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **KELVIN E. BROWN,** | ) | **Civil Action No. 7:14-cv-00020** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **RANDALL C. MATHENA, et al.,** | ) | **By:  Hon. Jackson L. Kiser** |
| **Defendants.** | ) | **Senior United States District Judge** |

Kelvin E. Brown, a Virginia inmate proceeding pro se and also known as Karim A.

Muhammad, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983.  Plaintiff generally

alleges that defendants, who are staff of the Virginia Department of Corrections ("VDOC") and the

Red Onion State Prison ("ROSP"), do not serve him nutritional food in conformity with his

Islamic beliefs.  Defendants filed a motion for summary judgment, and Plaintiff responded,

making the matter ripe for disposition.[1]  After reviewing the record, I grant defendants' motion for

summary judgment because Plaintiff fails to establish a violation of federal law and defendants are

entitled to qualified immunity.

## I.

Plaintiff filed this action because he believes trays of the VDOC's Common Fare Menu[2]

("Common Fare") are not prepared and served at ROSP in conformity with the religious

requirements of the Nation of Islam ("NOI"), which is Plaintiff's religion.  Plaintiff complains

---

[1] The court did not authorize Plaintiff to file "objections" to defendant's Answer.  See Fed. R. Civ. P. 12(a)(1)(C).

[2] Common Fare was developed to meet the dietary needs of inmates who need a Kosher, Halal, or non-pork diet for religious reasons and cannot be accommodated by foods on other VDOC menus.  In order to receive Common Fare, the inmate must apply to prison and VDOC officials and demonstrate a sincere religious need for Common Fare. If approved, the inmate must sign the Common Fare Agreement, promising to abide by the rules of participation. Violations of the Common Fare Agreement include failing to pick up at least 75% of the Common Fare meals served each month, eating, trading, or possessing unauthorized food items, giving away or trading a Common Fare food item, purchasing or eating food items inconsistent with Common Fare, and not attending available religious services at least twice per month.  An inmate who violates the Agreement is removed from Common Fare for six months for a first offense, a year for a second offense, and four years for a subsequent offense.  These sanctions are intended to deter the participation of inmates who lack a serious religious interest in the Common Fare program.

about the lack of hot water for morning cereals, the substitution of fruit juice for servings of fruit, the smaller portion sizes of Common Fare meals than of other menus, the quality of Common Fare vegetables and bread, the lack of religious certification for beverages and bread, and the manner trays, cups, and lids used for Common Fare are transported, cleaned, and stored in relation to the "unsanitary" foods served on other menus. Plaintiff also believes that prison workers are not qualified to serve Common Fare, that the administrative procedures implemented to be approved for, to receive, and to be removed from Common Fare are unlawful, and that inmates should not be forced to carry and present their identification cards to receive Common Fare. Plaintiff argues that these complaints violate his rights pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the First, Eighth, and Fourteenth Amendments. Plaintiff requests damages and declaratory and equitable relief.

Defendants explain that VDOC policy requires Common Fare meals to be prepared using premeasured ladles and scales to ensure proper food portions are served, and as a result, Common Fare has been analyzed and certified as meeting or exceeding minimum daily nutritional requirements. ROSP's reusable food trays and lids used for Common Fare meals are washed, sanitized, and stored separately from the trays and covers used for other menus, and all Common Fare meals are prepared separately from the regular menu meals and placed on serving carts that are reserved for Common Fare meals. Fresh produce is ordered every week and washed and cleaned. Produce that is not suitable for serving because of, for example, age or mold is discarded. Similarly, bread that is stale, moldy, or "old" is not served, and Common Fare meals include Kosher bread. Defendants further explain that fresh fruit is served when available, but 100% fruit juice is served as an appropriate replacement when no fresh fruit is available. Defendants admit

2

that the same beverages are served from the same containers regardless to the type of tray an inmate receives, but there is nothing in the record to support the proposition that the beverages contain pork-related ingredients or are contrary to religious requirements. Defendants assert that only authorized food items are served on the Common Fare menu, and all authorized food items comply with Kosher and Halal standards. Defendants also assert that all food service workers, including inmate kitchen workers, receive training and supervision in the proper handling of the food used for Common Fare and that all health, hygiene, and safety rules are enforced.

## II.

Defendants filed a motion for summary judgment, arguing that they are entitled to qualified immunity. Qualified immunity permits "government officials performing discretionary functions . . . [to be] shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Once a defendant raises the qualified immunity defense, a plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right. Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993).

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the

3

district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial.[3] Id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

Plaintiff does not state facts on which a reasonable factfinder could conclude that defendants Walrath, Shear, Parr, or Taylor had any personal involvement with Plaintiff's allegations. Also, staff's "after-the-fact denial of a grievance [or response to a letter] falls far short of establishing § 1983 liability." DePaola v. Ray, No. 7:12cv00139, 2013 U.S. Dist. LEXIS 117182, at *23, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013) (Sargent, M.J.). Liability under § 1983 may not be predicated on the theory of respondeat superior. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7 (1978); Fisher v. Washington Metro. Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir. 1982). Accordingly, these defendants are entitled to qualified immunity and summary judgment. I also note that Plaintiff has stated no facts to support any actionable claim for monetary damages under RLUIPA, and defendants are immune from damages in their official capacities. See, e.g., Sossamon v. Texas, __ U.S. __, 131 S. Ct. 1651, 1660 (2011);

---

[3] I note that Plaintiff cannot use a response to a motion for summary judgment to correct deficiencies in a complaint challenged by a defendant's motion for summary judgment. See Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009) (noting that a plaintiff may not amend a complaint through argument in a brief opposing summary judgment); Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (same).

4

Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009); Gray v. Laws, 51 F.3d 426, 430 (4th Cir. 1995). Finally,

## III.

Plaintiff alleges that a failure to provide Common Fare meals that are nutritionally equivalent to the meals served to the General Population violates the Fourteenth Amendment right to Equal Protection. The Equal Protection clause requires that persons similarly situated be treated alike. Plyer v. Doe, 457 U.S. 202, 216 (1982). In order to state an equal protection claim, a plaintiff must demonstrate that he has been treated differently from others who are similarly situated and that the unequal treatment was the result of intentional discrimination. Morrisson v. Garraghty, 239 F.3d 648 (4th Cir. 2001). "Ordinarily, when a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" Veney v. Wyche, 293 F.3d 726, 731 (4th Cir. 2002) (quoting Heller v. Doe, 509 U.S. 312, 319-320 (1993)). An equal protection violation occurs in one of two ways: (1) when the government explicitly classifies people based on race, or (2) when a law is facially neutral but administration or enforcement disproportionately affects one class of persons over another and discriminatory intent or animus is shown. Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 818-19 (4th Cir. 1995). An inmate's equal protection claim must be analyzed in light of a prison's special security and management concerns. Morrison, 239 F.3d at 655 (citing Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 136 (1977)).

5

Plaintiff alleges that Common Fare portion sizes are smaller than the portions received by the general population on other menus. However, an inmate who has chosen to receive Common Fare for religious reasons is not similarly situated to inmates willing to eat from the other menus. See, e.g., Awe v. Va. Dep't of Corr., No. 7:12-cv-00546, 2013 U.S. Dist. LEXIS 161227, at *8, 2013 WL 5988869, at *2 (W.D. Va. Nov. 12, 2013) (Kiser, J.) (rejecting Equal Protection claim related to the Common Fare diet because the plaintiff was "not similarly situated to inmates who do not require meals to be specially prepared based on a claimed religious belief"), aff'd, 2014 U.S. App. LEXIS 6031 (4th Cir. Apr. 1 2014) (per curiam). Plaintiff has not established that he is treated differently than other inmates receiving the same Common Fare foods and portion sizes. Accordingly, Plaintiff is "in all relevant respects alike" and similarly situated to inmates receiving Common Fare, not the other menus, and Plaintiff fails to establish an equal protection claim.

## IV.

Plaintiff alleges that requiring him to sign the Common Fare Agreement violates due process because the Agreement "unconstitutionally" provides for sanctions, including removal, if he violates the program's terms and conditions. Plaintiff believes "prison administrator[s] should not police prisoners!"

The Due Process Clause applies when governmental action deprives a person of a legitimate liberty or property interest. See, e.g., Bd. of Regents v. Roth, 408 U.S. 564, 576-77 (1972). The first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest, which arise from two sources: the Due Process Clause itself and the laws of the States. Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989). If a protected interest has been established, the court must next determine whether that interest has

6

been deprived, and if so, "examine[] whether the procedures attendant upon that deprivation were constitutionally sufficient." Id.

Plaintiff's due process claim must fail because he does not have a protected liberty interest in the Common Fare diet. Although "[s]tates may under certain circumstances create liberty interests which are protected by the Due Process Clause," those protected interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 483-84 (1995); see Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997) (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; long periods in the cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose a significant hardship). Plaintiff's participation in Common Fare does not create a protected liberty interest in either the program itself or the manner in which that program is administered. The fact that VDOC requires offenders to agree to abide by the terms of the Common Fare program does not create an independent substantive right, and prison officials retain the right to impose sanctions upon inmates who fail to abide by the conditions of the program in order to control costs and maintain discipline. See Olim v. Wakinekona, 461 U.S. 238, 250-51 (1983) ("The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, . . . but in making that choice the State does not create an independent substantive right."). Furthermore, Plaintiff has not

7

sufficiently described how his participation in the Common Fare program has been deprived since he receives Common Fare and has not been terminated or suspended from the program.

## V.

Plaintiff alleges that he has been served reduced portions and rotten, spoiled, or moldy foods, "which ultimately results in malnutrition/malnourishment, weight loss [of 17 pounds over more than two years], daily fatigue, mental withdrawal, stress, depression, deprived of caloric intake (vitamins, proteins, etc.), loss of mental focus – not meeting religious dietary needs – subjecting them to harm and injury – physically and psychologically," all in violation of the Eighth Amendment. "It is well-established that inmates must be provided with nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consumer it." Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985). Allegations of inadequate prison food service may be sufficient to state a claim for relief under § 1983 if the deprivation at issue is serious, but isolated instances of spoiled food or occasional and short-lived problems with food service are insufficient to state a cognizable claim under the Eighth Amendment. See, e.g., Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."); Bedell v. Angelone, No. 2:01cv780, 2003 U.S. Dist. LEXIS 27755, at *42, 2003 WL 24054709, at *14 (E.D. Va. Oct. 3, 2003) (holding that being served rotten food is unpleasant and unfortunate but does not state a claim when no serious deprivation occurred). While the Eighth Amendment protects prisoners from cruel and unusual living conditions, an inmate is not entitled to relief because he has been exposed to uncomfortable, restrictive, or inconvenient conditions of confinement. See Henderson

8

v. Virginia, 2007 U.S. Dist. LEXIS 70207, at *26, 2007 WL 2781722, at *7 (W.D. Va. Sept. 21, 2007) (Conrad, J.) (unpublished). Rather, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

## VI.

Plaintiff's complaints about Common Fare at ROSP involve displaying an identification card, untrained workers, "unsanitary" trays, cups, and lids, and the condition of the food he has received, including rotten fruits or vegetables, moldy bread, and inadequate portions, all allegedly in violation of VDOC policies, RLUIPA, and the First Amendment's Free Exercise Clause. According to the ROSP Food Service Manager, all kitchen staff are trained about Common Fare, fruits and vegetables are thoroughly scrubbed, spoiled foods are discarded, food is weighed and served with premeasured ladles to ensure adequate portions, Common Fare trays are placed in a sanitized dishwasher before other trays and items used on the other menus, and food temperatures and the Common Fare food preparation area are monitored.

RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that the imposition of the burden on that person is . . . (1) in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Plaintiff bears the initial burden of showing a substantial burden on his religious exercise. Id. § 2000cc-2(b); Lovelace v. Lee, 472 F.3d 174, 185-87 (4th Cir. 2006). "[A] substantial burden on religious exercise occurs when a state or local government . . . put[s] substantial pressure on the adherent to modify his religious behavior and significantly violate his

9

beliefs."[4] Id. at 187 (internal quotation marks omitted). A burden that is merely an "inconvenience on religious exercise" is not "substantial."[5] Konikov v. Orange Cnty., Fla., 410 F.3d 1317, 1323 (11th Cir. 2005). RLUIPA and the First Amendment are not intended to remedy negligent violations of inmates' religious practices. Lovelace, 472 F.3d at 194.

Viewing disputed material evidence in the light most favorable to Plaintiff, I find that defendants are entitled to qualified immunity and summary judgment. Plaintiff has not adequately substantiated his claim that displaying an identification card or Common Fare food quantity, quality, preparation, or handling at ROSP due to a defendant's act or omission put "substantial pressure" on him to modify his behavior and to violate his beliefs. See, e.g., Lovelace, 472 F.3d at 187; Talbert v. Jabe, 7:07-cv-00450, 2007 U.S. Dist. LEXIS 82962, at *19, 2007 WL 3339314, at *5-6 (W.D. Va. Nov. 8, 2007) (Conrad, J) (recognizing isolated incidents for food services that allegedly violate an inmate's religious beliefs indicate a lack of intent on the part of defendants and that intentional action must be established); Acoolla v. Angelone, Civil Action No. 7:01-cv-01008, 2006 U.S. Dist. LEXIS 62574, at *31 n.13, 2006 WL 2548207, at *8-9 n.13 (W.D. Va. Sept. 1, 2006) (Turk, J) (rejecting bald assertion that VDOC's practice of sanitizing food trays did not remove all food traces); Frazier v. Ferguson, Civil Action No. 04-5140, 2006 U.S. Dist. LEXIS

_____

[4] If an inmate establishes a substantial burden on his religious exercise, a defendant must show that the policy is the least restrictive means of furthering a compelling governmental interest. Id. at 189. A court should "not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety" and will instead apply RLUIPA "in an appropriately balanced way." Cutter v. Wilkinson, 544 U.S. 709, 711, 722 (2005). The court must give due deference to compelling state interests such as "good order, security and discipline, consistent with consideration of costs and limited resources." Id. at 723.

[5] Plaintiff's burden to state a free-exercise claim under the First Amendment is analogous to the burden under RLUIPA. Lovelace, 472 F.3d at 198-99, n.8; Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). Contrary to the level of scrutiny under RLUIPA, an inmate's free-exercise rights under the First Amendment may be restricted to the extent that prison policy is "reasonably adapted to achieving a legitimate penological objective." Lovelace, 472 F.3d at 200. Thus, the First Amendment, which adopts a less stringent standard of review, affords less protection to an inmate's religious exercise than does RLUIPA: reasonableness instead of strict scrutiny. Id. I afford Plaintiff the benefit of RLUIPA's more rigorous scrutiny, and to the extent Plaintiff's claims fail under RLUIPA, they also fail under the First Amendment.

10

101513, at *9-10, 2006 WL 2052421, at *4 (W.D. Ark. June 28, 2006) (finding no substantial burden under RLUIPA for an incarcerated Seventh-day Adventist who had to discard some food from vegetarian diet that was at odds with his religious vegan diet); Kretchmar v. Beard, Civil Action No. 05-6108, 2006 U.S. Dist. LEXIS 49530, at *16-18, 2006 WL 2038687, at *5 (E.D. Pa. July 18, 2006) (finding no RLUIPA or First Amendment violation for inmate who received Kosher diet that was nutritionally sufficient although food was repetitious and cold), aff'd, 241 F. App'x 863 (3rd Cir. 2007). Plaintiff also fails to show that the food items he does not want to eat comprise a substantial portion of the nutrients and calories in the Common Fare food he receives. As indicated in his responses, Plaintiff prefers to receive free, sterile, air-tight sealed meal trays of farm-fresh food prepared in a sterile environment and immediately hand delivered from the kitchen by professional waitstaff who are trained in Islamic beliefs, have not touched a surface that has ever been near a pork-related product or a "chemical," and "received medical clearance" to deliver food. However, his personal preferences about the food or its preparation based on conjecture or not based on a sincere religious conviction do not warrant relief, and prisons cannot burden such personal preferences when faced with real and immediate logistical, budgetary, and security considerations. Furthermore, the negligent preparation or service of Common Fare also does not establish a violation of RLUIPA or the First Amendment. The uncontroverted record reflects that Common Fare substantially accommodates Plaintiff's religious dietary needs as an adherent of NOI, and while Plaintiff asserts that he feels hungry and sometimes loses weight eating only the portions of Common Fare that meet his preferences, Plaintiff does not allege any resulting medical concern that warranted treatment. "[I]ncidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into

acting contrary to their religious beliefs," do not always compel the government to bring forward a compelling justification for its otherwise lawful actions.[6] Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 450 (1988); see Sherbert v. Verner, 374 U. S. 398, 412 (1963) ("For the Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government.") (Douglas, J., concurring). Moreover, a claim that prison officials have not followed their own independent policies or procedures does not state a constitutional claim. See, e.g., United States v. Caceres, 440 U.S. 741, 752-55 (1978); Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990). Accordingly, defendants are entitled to qualified immunity and summary judgment.

## VII.

For the foregoing reasons, defendants' motion for summary judgment is granted.

**ENTER**: This 16th day of September, 2014.

Senior United States District Judge

---

[6] I also conclude that the record supports a finding that the Common Fare program as currently operated furthers compelling state interests by the least restrictive means. See Lyng, supra. Common Fare regulations reflect that VDOC and ROSP administrators have undertaken substantial effort to design and implement a single, centralized program that is certified by experts in religion and nutrition to accommodate Plaintiff's dietary beliefs and nutritional needs. I find it self-evident that the centralized menu and procedures further legitimate and neutral VDOC interests as a cost-efficient, uniform manner by which to accommodate inmates' various religious dietary beliefs at numerous VDOC facilities. See id. at 452 ("However much we might wish that it were otherwise, government simply could not operate if it were required to satisfy every citizen's religious needs and desires."); see also Coleman v. Jabe, No. 7:11-cv-00518, 2013 U.S. Dist. LEXIS 114551, at *6, 14-15, 2013 WL 4084762, at *2, 5 (W.D. Va. Aug. 13, 2013) (Wilson, J) (recognizing that the every inmate's religious demand to change the Common Fare program cannot be accommodated).